Sandra C. SWEENEY, Plaintiff,

v.

STATE OF ALABAMA ALCOHOLIC
BEVERAGE CONTROL
BOARD, Defendant.

No. Civ.A. 98–D–728–N.

United States District Court,
M.D. Alabama,
Northern Division.

April 17, 2000.

Sandra C. Sweeney, Montgomery, AL, Pro se.

Jacqueline L. Mixon, Montgomery, AL, for Plaintiff.

Robert S. Hill, Montgomery, AL, for Defendant.

### MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Defendant State of Alabama Alcoholic Beverage Control Board's ("ABC Board" or "Defendant") Motion For Summary Judgment ("Mot."), and Brief ("Br."), both filed February 1, 2000. On February 17, 2000, Plaintiff Sandra C. Sweeney ("Plaintiff") filed a Response And Brief To Motion For Summary Judgment ("Resp."). The ABC Board filed a Reply on February 24, 2000. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that the ABC Board's Motion is due to be granted in part and denied in part.

### JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 42 U.S.C. §§ 12101, et seq. (Americans with Disabilities Act of 1990 ("ADA")), and 28 U.S.C. § 1367 (supplemental jurisdiction). The Parties do not contest personal jurisdiction or venue.

### SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factu-

al inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing FED.R.CIV.P. 56(c)).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' " that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548 (citing FED. R.CIV.P. 56(c)). The mechanics of satisfying the initial burden vary, however, depending upon which party, the movant or the nonmovant, bears the burden of proof at trial. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993) (detailing the nature of the parties' responsibilities when preparing or defending against a motion for summary judgment).

Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (citing FED.R.CIV.P. 56(e)). In meeting this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." FED.R.CIV.P. 56(e); *see also Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348; *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

## BACKGROUND[1]

On October 15, 1994, Plaintiff, a black female, began working for the ABC Board

1. In ruling on the ABC Board's Motion For

Summary Judgment, the court has carefully

as a cashier at one of its retail stores in Montgomery, Alabama. (Br., Ex. A; Am. Compl. ¶ 1.) As a cashier, Plaintiff's duties included preparing and depositing the store's daily sales proceeds at a local bank. (Resp. at 1.) On August 1, 1997, shortly after midnight, Plaintiff was robbed at gunpoint as she approached the bank's night depository to deposit the ABC Board's sales proceeds from July 31, 1997. (Dillon Aff. at 1;[2] Am.Compl., Exs. A, F; Resp. at 1.) As a result of the robbery, Plaintiff suffered physical injuries, including pain in her left arm, head and chest. Plaintiff also experienced emotional trauma. (Resp. at 2.)

Plaintiff's district supervisor, Don White ("White"), suggested that Plaintiff contact the State of Alabama Employee Assistance Program ("EAP") to seek counseling for the trauma she was experiencing from the robbery. (Dillon Aff. at 1; Compl. ¶ 7; Pl.'s Dep. at 15–16.) Sam Boswell ("Boswell"), an EAP counselor, recommended that Plaintiff seek care through the Alabama Psychiatric Services. (Dillon Aff. at 1.)

Plaintiff followed Boswell's recommendation and sought treatment from Dr. Wendell Bell ("Dr.Bell"), a staff psychiatrist with the Alabama Psychiatric Services. (Pl.'s Dep. at 16–17; Dillon Aff. at 1–2.) In a letter dated August 18, 1997, Dr. Bell wrote J.E. Brown[3] ("Brown") a letter regarding his treatment of Plaintiff. In this letter, Dr. Bell informed Brown of the following:

> Ms. Sweeney has been evaluated by me and is under treatment with me for

posttraumatic stress disorder (PTS) arising out of resent [sic] robbery at gunpoint she suffered while depositing money from the ABC store at which she works.

Happily, Ms. Sweeney is doing well and is able to return to work with the following restrictions: 1.) She needs to start work on the day shift and continue on the day shift (9 a.m. – 6 p.m.) for a period of approximately one month to reacquaint her gradually to the store and not expose her to dangerous hours; 2.) She needs to be restricted from ever depositing monies from the store, which deposit she describes as dangerous and potentially life-threatening, a conclusion with which I would concur from her description, and she should have no more trauma from being expected to do this.

(Am.Compl., Ex. C at 1.)

However, when Plaintiff returned to work, she claims that the store manager, Emit Hardie ("Hardie"), failed to comply with the "spirit" of Dr. Bell's restrictions. (Am.Compl. Exs. D & L.) Specifically, on August 22, 1997, while Plaintiff was sweeping the store's parking lot, Hardie locked the store doors. Hardie then left to eat breakfast, leaving Plaintiff alone in the parking lot. (Am.Compl. ¶ 21 & Exs. E & N.)

Plaintiff reported Hardie's "conduct" to Dr. Bell, White and Tracey McCooey ("McCooey").[4] (Am.Compl. ¶¶ 10, 22; Pl.'s Dep. at 20–22.) Based on Plaintiff's complaint, Dr. Bell wrote a second letter to Brown, dated August 26, 1997, stating as follows:

examined all submissions by the Parties and has construed them in the light most favorable to Plaintiff, the non-moving party. *See Welch v. Celotex Corp.,* 951 F.2d 1235, 1237 (11th Cir.1992)

**2.** Dan Dillon ("Dillon") is the Director of Personnel for the ABC Board. (Dillon Aff. at 1.)

**3.** Brown is currently retired, but at all times relevant to this action, he served as the Director of the ABC Board's Stores Division. (Brown Aff. at 1.)

**4.** At all times pertinent to this action, McCooey served as legal counsel with the Alabama State Employees Association ("ASEA").

Ms. Sweeney continues in care with me for posttraumatic stress disorder (PTSD) arising out of a recent robbery at gun point which she suffered while depositing money from the ABC store at which she works.

On August 18, 1997, I wrote to you delineating work restrictions under which Ms. Sweeney was able to return to work. Today, Ms. Sweeney was seen by me in the company of her husband and her niece. Ms. Sweeney is very upset because she has attempted to return to work but perceives that the spirit of the restrictions under which she was allowed to return to work have been violated. While the exact restrictions have not been violated, technically, her immediate supervisor has complained about the restrictions and has left her alone in the store, which situation is a dangerous situation, in light of Ms. Sweeney's reasonable fears of being robbed again or being retaliated against by the original perpetrator. Under these conditions in which Ms. Sweeney does not feel safe and supported by her colleagues and her supervisor, she is unable to return to work.

Therefore, I am recommending for Ms. Sweeney's own psychiatric health that she again stay off work until further evaluated. I must emphasize that Ms. Sweeney cannot recover from her trauma which she received while in the assigned duties at the ABC store unless she has a reasonable safe and secure place at which she can work.

I have recommended to Ms. Sweeney that she further discuss this matter with you in order that we might expedite her rapid recovery as well as her return back to work.

(Am.Compl., Ex. D.[5])

Additionally, McCooey received a copy of Dr. Bell's August 26, 1997 letter. In

response, McCooey wrote Brown a letter dated August 27, 1997. In that letter, McCooey stated that she "reviewed" Dr. Bell's letter and that the ABC Board failed to comply with Dr. Bell's restrictions by leaving Plaintiff "alone while at work." (Am.Compl., Ex. E at 1.) McCooey then made the following two requests:

> [T]hat the [ABC Board] comply with the restrictions as set forth by her psychiatrist so that Ms. Sweeney can return to work. Also, I would request that Ms. Sweeney be transferred to another store location in Montgomery. It is evident that she will always be scared and uncomfortable working at the Norman Bridge location.

(*Id.*)

Handwritten on McCooey's letter are two notations by Brown. The first, dated August 28, 1997, states as follows: "Discussed with Tracey via telecon. Told her we were complying with 8/18/97 letter and we would try to work w/ employee for short time but we could not comply w/ restrictions permanently. I would transfer her if another employee agrees to transfer...." (Am.Compl., Ex. E at 1.)

The second handwritten notation, dated September 2, 1997, states as follows: "Talked w/ Tracey and Gail Ellerbrake (EAP 223–6179). They are concerned about Sandra getting treated within FMLA. I told them I felt she was using us to get her way [with job assignments] and not telling her doctor the full details. I want everyone playing by same rules. Tracey will call Dan Dillon to insure Sandra has all necessary paperwork for FMLA." (Am.Compl., Exs. E & M.)

As a result of Dr. Bell's letter, Plaintiff remained on leave and continued under his treatment. In October 1997, Plaintiff also

---

**5.** Brown states that he received Dr. Bell's letter dated August 26, 1997, but not Dr. Bell's first letter, dated August 18, 1997. However, Brown states that a copy of the August 18, 1997 letter was attached to Dr. Bell's August 26, 1997 letter. (Am.Compl., Ex. M.)

sought medical attention for her physical injuries, which had continued to bother her since the robbery. On October 21, 1997, Dr. D. Beauchamp diagnosed Plaintiff with "cervical strain, Lt arm + chest strain." (Am.Compl.Ex. F.) Dr. Beauchamp prescribed "skelaxin 400mg, motrin 800 mg." (*Id.*) On October 24, 1997, Plaintiff saw a second physician, Dr. William J. McDowell. In his report, Dr. McDowell diagnosed Plaintiff's physical symptoms as "chest wall strain as well as a left shoulder, arm and back strain-chronic." (*Id.*) Dr. McDowell recommended "PT, ultrasound, heat and as needed by PT to handle any difficulty she has." (*Id.*)

While Plaintiff cannot remember the exact timeframe, she states that, sometime in 1997, perhaps December 1997, Dr. Beauchamp diagnosed Plaintiff with "fatigue syndrome." (Pl.'s Dep. at 43–44.) "Fatigue syndrome" is a condition that makes Plaintiff's "joints ... hurt all the time." (*Id.* at 39–42.) According to Plaintiff, based on her fatigue syndrome, she had "notes from the doctors saying no lifting, no pushing, that type of thing." (*Id.* at 44.) However, there is no medical evidence in the record of Plaintiff's fatigue syndrome.

On October 27, 1997, while on leave, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that the ABC Board violated the ADA by failing to provide reasonable accommodations for her disability. (Am.Compl., Ex. G.) Plaintiff's specific allegations in her EEOC charge are as follows:

> In January, 1997, I informed the [ABC Board] of the need for a reasonable accommodation. Thereafter, in August, 1997, I informed the [ABC Board] of a

need for reasonable accommodation for additional disabilities. I am currently employed as a cashier.

> The [ABC Board] has consistently failed to comply with my requests for accommodation.

> I believe. I have been discriminated against because of my disabilities in violation of the Americans with Disabilities Act of 1990.

(Am.Compl., Ex. G.[6]) In a letter dated November 18, 1997, the ABC Board filed a response with the EEOC, wherein the ABC Board denied Plaintiff's allegations. (Br., Ex. A.)

Several months later, in a letter dated December 12, 1997, Brown wrote Dr. Bell a letter, stating as follows:

> Ms. Sweeney has been a patient of yours since August 8 for posttramatic [sic] stress disorder. In a letter from you dated October 14, you stated Ms. Sweeney would be able to resume normal work activities on October 17.[7] She has been treated by her primary care physician for a medical problem. Her primary care physician has released her to return to duty with some restrictions. We would appreciate your confirmation of whether or not Ms. Sweeney is able at this time to return to her cashier duty and if any specific restrictions apply.

> This is an extremely busy sales period for our Agency, and we badly need her to return to work if it would not be detrimental to her recuperation.

> We are notifying Ms. Sweeney to return to work, December 16, unless we receive specific recommendations from you prior to that time.

(Am.Compl., Ex. O).

In a letter to Brown dated December 15, 1997, Dr. Bell replied that Plaintiff was

---

**6.** The court notes that Plaintiff did not raise a claim in either her Complaint or Amended Complaint relating to the ABC Board's alleged failure to accommodate Plaintiff in January 1997.

**7.** The court notes that Dr. Bell's letter dated October 14, 1997 is not part of the record. Thus, the court is unaware of its contents.

"able to return to work immediately with the following restrictions: 1.) She works only during the daylight hours; 2.) She never works in the store alone; and 3.) She is never required to deposit monies from the store to the bank." (Am.Compl., Ex. P.)

However, Plaintiff did not return to work in December 1997. The events which transpired after Brown received Dr. Bell's December 15, 1997 letter are contained in an internal memorandum signed by Brown. (Am.Compl., Ex. P.) In Brown's memorandum, he states that he held a meeting on December 18, 1997, with Plaintiff, her husband, Dillon and White. The purpose of the meeting was "to discuss how [the ABC Board] could accommodate her and return her to work without violating Dr. Bell's recommended work restrictions." (Am.Compl., Ex. B.) According to Brown's memorandum, the following occurred at this meeting:

> The Sweeney's [sic] were told that we could return Ms. Sweeney to work and comply with Dr. Bell's recommendations if the restrictions are temporary; however, because limited daylight hours preclude scheduling her for an 8 hour workday, it will be necessary to spread her 40 hour work schedule over a six day period. Ms. Sweeney objected to her doctor's release allowing her return, especially since he had not consulted her and had not seen her since sometime in November. She became very emotionally animated and vocal stating she didn't trust anyone in the ABC Board, that this meeting was an attempt to intimidate her and her life had been taken from her because of the emotional trauma she has experienced because of the robbery. Her behavior was anything but rational. We opted to terminate the discussion so Ms. Sweeney could calm down. . . .
>
> I suggested to the Sweeney's [sic] that they should consider the nature of an ABC Cashier's duties, the work environment and the customer clientele and decide if these duties are appropriate for Ms. Sweeney or if she might be more comfortable seeking another type of employment; I further suggested that the subject be addressed with Dr. Bell.
>
> Based upon this meeting with the Sweeney's [sic], we felt Ms. Sweeney was not ready to deal with the pressures of normal ABC Cashier duty. She will remain in LWOP [Leave Without Pay] status pending subsequent recommendations by Dr. Bell.

(Am.Compl., Ex. P; Pl.'s Dep. at 27.)

After this meeting, Plaintiff remained on leave and continued to receive treatment from Dr. Bell. Finally, in a letter dated March 26, 1998, Dr. Bell wrote Brown stating as follows:

> Ms. Sweeney has been in psychiatric treatment with me since August of 1997. She is treated for posttraumatic stress, generalized anxiety disorder, major depressive disorder, panic disorder, and dissociative disorder.
>
> In recent weeks, Ms. Sweeney has done well.
>
> Ms. Sweeney is able to work in any capacity which she believes she can handle.

(Am.Compl., Ex. Q; Pl.'s Dep. at 30.) After receiving this letter, Brown met with Plaintiff on March 31, 1998, and the two of them determined that Plaintiff would return to work full time on April 1, 1998. (Am.Compl., Ex. Q; Brown Aff. at 1; Pl.'s Dep. at 31.) During their meeting, Brown and Plaintiff reviewed a form entitled "Tasks Statements." (Brown Aff. at 1.) This form lists thirteen different tasks performed by the ABC Board's cashiers, with a "Yes" and "No" column by each task for the employee to initial. "Yes" indicates that the employee can "fully" perform the task, while "No" indicates that the employ-

ee cannot perform the particular duty. The tasks range from "set[ting] up cash register for use" and "count[ing] merchandise in the store warehouse and sales area" to "assembl[ing] original in-store merchandise displays and monthly special displays" and performing custodial duties. (*Id.*)

Brown asked Plaintiff "to indicate her ability to perform [each] task by placing an initial" in either the "Yes" or "No" column. (*Id.* at 1.) Plaintiff "initialed 'yes' by each task and signed and dated the acknowledgment that she understood that her initial indicated whether or not she could fully perform each respective task." (*Id.* at 1.) According to Brown, Plaintiff "did not indicate ... that she felt she had any limitations or restrictions which would need to be considered in her job assignment." (*Id.* at 1.) Brown attached the "Tasks Statements" to his Affidavit. The "Tasks Statements" show that Plaintiff initialed the "Yes" column by each of the enumerated eleven tasks. At her deposition, Plaintiff did not "deny" that she "had initialed each [task] statement indicating that [she] could perform the task statements." (Pl.'s Dep. at 31–32.)

Plaintiff returned to her position as a cashier on April 1, 1998, and worked "continuously" and full time until her termination on July 2, 1998. (*Id.* at 31.) Plaintiff said that, when she returned to work, she thought Dr. Bell's restrictions, delineated in his August 1997 letters, still applied and that the ABC Board refused to comply with these restrictions. (*Id.* at 36–37.) She states that she "continued to do inventory until twelve o'clock midnight," was "[s]till required to do deposits or make deposits ready." (*Id.* at 32, 34.) Not only did Plaintiff have to "get the money for the deposit ready," but "sometimes" she also had to drive another employee to the bank and wait in the car while the employee made the deposit. (*Id.* at 34–35.) She further states that she had to "[w]ork

alone." (*Id.* at 32, 33, 34.) Plaintiff complained to "several of the managers," including White. (*Id.* at 33.)

On June 26, 1998, Brown recommended Plaintiff's termination in a letter to Robert B. Leavell ("Leavell"), the ABC Board's Administrator. In that letter, Brown states as follows:

*This is a decision paper.*

PURPOSE: To recommend dismissal of [Plaintiff] for serious violations of policy.

DISCUSSION: After receiving a report that Ms. Sweeney had attempted to attack a coworker at Store 3 during duty hours, Tommy Miller and David Kilpatrick conducted an investigation. The investigation seems to validate the fact that Ms. Sweeney did attempt to attack a coworker, but was restrained by her husband another store employee. The video surveillance tapes and statements by other store employees support this allegation.

During the course of the investigation, other information surfaced which indicates Ms. Sweeney had violated numerous employee work rules. According to statements by other store employees and Ms. Sweeney's own admission, she has engaged in what we deem to be inappropriate employee conduct.

RECOMMENDATION: Ms. Sweeney be dismissed from State service for violation of State General Work Rules as stated in ABC Policies and Procedure, chapter ABC–7–16–.02(1)(d) and (g), and ABC–7–16–.02(2)(d), (e), and (n).

(AmCompl., Ex. R.) Leavell "approve[d]" the recommendation. (*Id.*)

Thus, on June 26, 1998, Leavell forwarded to Plaintiff a letter, in which he stated that "[i]nformation has been submitted that appears to warrant your dismissal from State service because of your violation of State General Work Rules." (Br.,

Ex. F.) In this letter, Leavell listed the violations as follows:

Chapter ABC–7–16–,02(1)(d): Inattention to job—Doing anything distracting while on the job.

Chapter ABC–7–16,02(1)(g): Disruptive conduct of any sort, including a lack of cooperation and/or an unpleasant behavior toward fellow employees and/or supervisor.

Chapter ABC–7–16–,02(2)(d): Fighting

Chapter ABC–7–16–,02(2)(e): Use of abusive or threatening language.

Chapter ABC–7–16–,02(2)(n): Disgraceful conduct on or off the job.

(*Id.*) Finally, in his letter, Leavell informed Plaintiff that a pretermination hearing was set on July 1, 1998, at which time Plaintiff would "have the opportunity to present information in response to these allegations." (*Id.*)

Based on Leavell's letter, Plaintiff filed a *pro se* Complaint in this court on June 30, 1998. In her Complaint, Plaintiff alleges that, in violation of the ADA, the ABC Board fired her in retaliation for engaging in protected conduct. (Compl. at 1; Pl.'s Dep. at 8–14.) Specifically, Plaintiff claims as follows:

I was robbed [o]n August 1, 1997 and presently [am] being treated for post traumatic stress disorder[,] generalized anxiety disorder, major depression disorder, panic disorder, dissociative disorder NOS. I filed a claim with EEOC [o]n Oct. 27, 1997. I was off work for 7 months then I return [sic] in which the State of Alabama ABC Board has retaliated by a hostil [sic] firing.

(Compl. at 1.)

After the pretermination hearing, the ABC Board forwarded a letter to Plaintiff,

in which it officially notified Plaintiff of her termination, effective July 2, 1998. (Br., Ex. B.) Plaintiff appealed her termination to the Alabama State Personnel Board ("Personnel Board").[8] (Br., Ex. C.) The Personnel Board appointed a hearing officer to conduct the hearing and receive evidence. (Br., Exs. D & E.) Plaintiff was present at the hearing held on October 9, 1998. (*Id.*) Seven witnesses testified, including two of Plaintiff's co-employees: Paige Watkins ("Watkins"), whom Plaintiff allegedly assaulted, and Bessie Auls ("Auls"). (Br., Ex. D at 1–16.)

In a written Order, signed October 23, 1998, the hearing officer made the following findings of fact and conclusions of law:[9]

The Department has charged the Employee with two separate and distinct matters. The first involves the assault or attempted assault upon a co-worker, Ms. Paige Watkins, which occurred on June 20, 1998. The testimony in this case is undisputed the Employee made an effort to physically attack Ms. Watkins and had to be restrained by her husband. The only disputed evidence concerning the June 20, 1998 incident is whether the Employee threatened to kill Ms. Watkins during the course of this attack. I find the greater weight of credible evidence to be that the Employee did in fact threaten to kill Ms. Watkins during the course of this attack. The Department has proved this charge by more than substantial evidence.

The second charge against the Employee involves improper conduct on the part of the Employee with customers in the store. The evidence presented at the hearing shows this contact to have

---

**8.** Pursuant to § 36–26–27(a), when an employee is dismissed by his or her appointing authority, in this case the ABC Board, he or she may appeal such action to the Personnel Board and request a hearing. ALA.CODE § 36–26–27 (1991).

**9.** The hearing officer refers to the ABC Board as "Department," and Plaintiff as "Employee."

been of an inappropriate or improper sexual nature in that the Employee engaged in words and actions of an inappropriate sexual nature with customers during regular business hours. The evidence in this case strongly supports a finding that the Employee did in fact engage in improper contact with customers to include improper touching of customers during normal business hours. The video tape which purports to show improper actions by the Employee corroborates the testimony of the witnesses. The only bothersome thing about the evidence concerning this matter is the apparent lack of supervision by the store management. I do not believe the manager of the store was unaware of these events. There is some evidence the Manager took some action to discourage these events by discouraging customers from hanging around the store. However, the evidence does not show any formal disciplinary action was taken against the Employee for these events. The investigator testified the Department was not aware of the inappropriate contact with customers until such time as it investigated the assault upon Ms. Watkins.

The evidence in this case overwhelmingly shows the improper conduct alleged by the Department to be proved by more than substantial evidence. I find the witnesses on behalf of the Department to be far more credible than the witnesses on behalf of the Employee.

Therefore, the Department has proved its second charge against the Employee.

(*Id.* at 16–17.)

Further, the hearing officer determined that, despite Plaintiff's satisfactory perfor-

mance rating, there were no factors warranting "mitigation of punishment."[10] (*Id.* at 18.) Thus, the hearing officer recommended that "the Employee's dismissal be upheld." (*Id.* at 19.) After examining the record of the proceedings before the hearing officer, the Personnel Board "adopt[ed]" the hearing officer's "findings of fact and conclusions of law." (Br., Ex. E.) The Personnel Board then "affirmed" the ABC Board's decision "to dismiss" Plaintiff. (*Id.*)

As stated above, Plaintiff's *pro se* Complaint was pending in this court when Plaintiff was fired on July 2, 1998. Thereafter, Plaintiff retained counsel, and, on August 3, 1999, Plaintiff's counsel filed an Amended Complaint. Plaintiff's Amended Complaint "realleges and incorporates all paragraphs of her 'Original' [C]omplaint." (Am.Compl. at 1; Pl.'s Dep. at 15.) In her Amended Complaint, Plaintiff sets forth two additional counts. Plaintiff labels Count 1 of her Amended Complaint as arising under "Title VII of the Civil Rights Act of 1964 and Title VII[sic] Americans with Disabilities Act." (Am.Compl. at 4.) Count 1 contains several allegations. First, Plaintiff claims that, upon returning to work on August 18, 1997, Plaintiff's supervisor violated Dr. Bell's restrictions by "leaving [ ][P]laintiff alone outside the store." (*Id.* ¶¶ 19–20.) Additionally, Plaintiff alleges, that even after the ABC Board's agents, Brown and White, received two letters from Drs. Beauchamp and McDowell "outlining" Plaintiff's "disabilities and restrictions," the ABC Board "continued to fail to accommodate her disabilities by making her cut grass and unload trucks, ect. [sic]." (*Id.* ¶ 26.)

**10.** Regarding Plaintiff's employee evaluations, the hearing officer noted as follows:

Employee received meets standards ratings on her probationary reports and no adverse work habit ratings. The Employee's 1996 performance appraisal shows her have no adverse work habit ratings and a meet standards score. The Employee's 1997 performance ap-

praisal shows her to have an exceeds standards score and no adverse work habit ratings. There is no performance appraisal for 1998 in Employee's file. The Manager of the store also testified that ha she rated the Employee for 1998 she would have received a "satisfactory" rating.
(*Id.* at 18.)

Second, Plaintiff asserts that the ABC Board, through its "management and [ ] Brown," subjected Plaintiff to "a hostile work environment . . . by openly complaining to [ ][P]laintiff about the restrictions." (*Id.* ¶ 25.) As "further evidence of the hostile work environment," Plaintiff states that Brown made notes "regarding his conversation with [ ] McCooey whereby he states he will only try to comply with the restrictions for a short time and complains that [Plaintiff] is using them trying to get her way." (*Id.*)

Third, Plaintiff alleges that, based upon the restrictions imposed by Dr. Bell, the ABC Board retaliated against Plaintiff "by accusing her of attacking a co-worker and lewd conduct" and ultimately firing Plaintiff. (*Id.* ¶ 33.) Additionally, Plaintiff alleges that, when she reported her manager's failure to comply with Dr. Bell's restrictions to the ASEA in August 1997, the ABC Board engaged in further retaliation. (*Id.* ¶ 10.) Specifically, Plaintiff claims that "her supervisors . . . created a hostile work environment in violation of Title VII, by subjecting her to perform duties that further aggravated her physical and medical disability and accussing [sic] her of violating work policies which such conduct affecting a term, condition or privilege of employment based on her race, sex and disability in order to terminate her employment." (*Id.* ¶ 10.)

In Count 2, Plaintiff brings two state-law claims against the ABC Board for slander/defamation and outrage. Plaintiff contends that the ABC Board is liable for its employees' intentional torts under a ratification theory. (*Id.* at 11–14.) First, Plaintiff contends that Watkins and Auls falsely testified at the October 9, 1998 hearing that Plaintiff "tried to attack" Watkins and that Plaintiff "had improper physical contact of [a] sexual nature with several customers." (*Id.* at 13.) Plaintiff contends that Watkins and Auls' testimony constitutes defamation and slander. (*Id.*) Second, Plaintiff claims that her co-workers subjected her to conduct that was so "atrocious" and "utterly intolerable" as to support a claim for the tort of outrage under Alabama law. (*Id.* at 13–14.)

Plaintiff requests a declaratory judgment, compensatory damages, punitive damages, attorney's fees and costs. (*Id.* at 14.) Plaintiff also demands a trial by jury. (*Id.* at 15.)

## DISCUSSION

Construing Plaintiff's allegations broadly, the court finds that Plaintiff has alleged the following six claims: (1) an ADA retaliation claim (Compl. at 1–2; Am.Compl. ¶ 33); (2) an ADA failure-to-accommodate claim (Am.Compl.¶¶ 3, 19–21, 24–26, 32–34); (3) an ADA hostile work environment claim (*Id.* ¶¶ 25, 33–34); (4) a Title VII hostile work environment claim based on sex and/or race (*Id.* ¶¶ 3, 33–34); (5) a state-law slander/ defamation claim (*Id.* at 11–13); and (6) a state-law outrage claim.[11] (*Id.* at 13–14.)

The ABC Board contends that it is entitled to summary judgment on all of Plaintiff's claims and raises the following arguments. First, as to Plaintiff's ADA retaliation claim, the ABC Board contends that Plaintiff has not made out a prima facie case and, additionally, has failed to rebut the ABC Board's non-discriminatory reasons for firing Plaintiff. (Br. at 3–6.) Second, regarding Plaintiff's ADA failure-to-accommodate claim, the ABC Board claims, in part, that Plaintiff has not es-

---

11. In finding that Plaintiff has alleged the above six claims, the court has liberally construed Plaintiff's allegations in her Complaint and Amended Complaint "for the furtherance of justice" and to facilitate a proper decision on the merits. *United States v. Parker,* 120 U.S. 89, 94, 7 S.Ct. 454, 30 L.Ed. 601 (1887); *see* FED.R.CIV.P. 8(f) (stating that "[a]ll pleadings shall be so construed as to do substantial justice").

tablished that she is disabled within the meaning of the ADA. (*Id.* at 6–11.) Third, the ABC Board states that Plaintiff's hostile work environment claims, whether brought under the ADA or Title VII, are time barred because Plaintiff failed to include these claims in her EEOC charge. (*Id.* at 12–14.) Fourth, the ABC Board contends that Plaintiff's state law claim for defamation fails based on the defense of absolute privilege and on the merits. (*Id.* at 14–15.) Fifth, the ABC Board claims that, as a matter of law, Plaintiff has failed to submit evidence rising to the level of egregiousness required to maintain a state law claim for outrage. (*Id.* at 18–20.)

For the reasons that follow, the court agrees with the ABC Board as to some, but not all, of its contentions. The court addresses the ABC Board's arguments separately, below, after setting forth the general principles of law applicable in ADA and Title VII actions.

## I. General Principles Of Law In Title VII And ADA Actions

Both Title VII and the ADA prohibit discrimination in the workplace. Title VII provides that an employer may not "discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race [or] . . . sex." 42 U.S.C. § 2000e–2(a)(1). The ADA mandates that employers shall not discriminate against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Also applicable in this action is the ADA's provision prohibiting an employer from discriminating against an employee "because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge . . . under [the ADA]." 42 U.S.C. § 12203(a).

■ Under Title VII and the ADA, a plaintiff must demonstrate through either direct or circumstantial evidence that the ABC Board's actions were the result of intentional discrimination. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 519, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *see also Chockla v. Celebrity Cruise Lines, Inc.*, 47 F.Supp.2d 1365, 1369 (S.D.Fla. 1999). Where, as here, a plaintiff seeks to prove intentional discrimination through circumstantial evidence of the employer's intent, the court applies the familiar three-part, burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green* and *Texas Dep't of Community Affairs v. Burdine. See* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *see also Hilburn v. Murata Elec. N. America, Inc.*, 181 F.3d 1220, 1226 (11th Cir.1999) (holding that the *McDonnell Douglas* and *Burdine* burden-shifting analysis used by courts to analyze Title VII employment discrimination claims applies equally to ADA claims) (citing *Moses v. American Nonwovens, Inc.*, 97 F.3d 446, 447 (11th Cir.1996)).

Under the *McDonnell Douglas* and *Burdine* burden-shifting framework, a plaintiff must first raise an inference of discrimination by establishing a prima facie case. *Batey v. Stone*, 24 F.3d 1330, 1333 (11th Cir.1994). Once a plaintiff has established a prima facie case, the burden shifts, and the employer "must proffer a legitimate, non-discriminatory reason for the adverse employment action. The employer's burden is 'exceedingly light.' " *Meeks v. Computer Associates Intern.*, 15 F.3d 1013, 1021 (11th Cir.1994) (quoting *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1495 (11th Cir.1989)). Should the employer fail to meet its bur-

den of production once the plaintiff establishes his or her prima facie case, "the unrebutted presumption of discrimination stands." *Turnes v. AmSouth Bank, N.A.,* 36 F.3d 1057, 1061 (11th Cir.1994) (citing *Joshi v. Florida State Univ. Health Ctr.,* 763 F.2d 1227, 1236 (11th Cir.1985)).

If the employer satisfies its burden, the presumption of discrimination disappears from the case, and the plaintiff must then establish that the employer's proffered reasons are pretextual. "[T]he plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir.1997).

## II. Plaintiff's ADA Retaliation Claim

Plaintiff contends that, in violation of the ADA, the ABC Board fired her because she filed an EEOC charge against the ABC Board. (Compl. at 2.) In moving for summary judgment on Plaintiff's retaliation claim, the ABC Board sets forth the following two arguments. First, the ABC Board claims as follows:

> [O]n the date of the filing of the Complaint, i.e., June 30, 1998, [Plaintiff] had not yet been terminated from her employment. She had simply received a notification on or about June 26, 1998 that termination was being considered and that a pre-dismissal hearing had been set for July 1, 1998.... The date of termination was July 2, 1998.[ ] Defendant asserts that it is entitled to summary judgment as a matter of law since Plaintiff had not yet been terminated upon the filing of her Complaint.

(Br. at 3.) The ABC Board's first argument appears to challenge Plaintiff's ability to show that she was subjected to an adverse employment action, as required under the second element of her prima facie case. Second, the ABC Board asserts generally that "summary judgment should be granted due to Plaintiff's failure to meet her burden of proof for retaliatory discharge," or, specifically, because the ABC Board has set forth legitimate non-discriminatory reasons for firing Plaintiff which Plaintiff cannot rebut. (*Id.*)

In response, Plaintiff does not specifically address the ABC Board's arguments or discuss the legal elements applicable to her ADA retaliation claim. Rather, Plaintiff argues generally that "her pleadings in both her original and amended complaints are well plead[ed] and present genuine issues of material fact." (Resp. at 1.) Plaintiff then refers the court to the exhibits attached to her Amended Complaint as proof of said facts.

Despite Plaintiff's failure to directly address the ABC Board's arguments and to discuss the burden-shifting analysis, for the reasons that follow, the court finds that Plaintiff may proceed to trial on her ADA retaliation claim.

■ To demonstrate a prima facie case of retaliation under the ADA, Plaintiff "must show: (1) statutorily protected expression; (2) adverse employment action; and (3) a causal link between the protected expression and the adverse action." *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1287 (11th Cir.1997). On summary judgment, the ABC Board, as the moving party, must state the basis for its Motion For Summary Judgment as to each element of Plaintiff's prima facie case and must identify those portions of the record which show an absence of a genuine issue of material fact as to each element of Plaintiff's prima facie case. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Fitzpatrick,* 2 F.3d at 1115–1116. Only then does Rule 56(e) of the Federal Rules of Civil Procedure require Plaintiff to "set forth *specific facts* showing there is a gen-

uine issue for trial." FED.R.CIV.P. 56(e) (emphasis added). Having set forth the applicable law, the court now addresses the ABC's arguments as they pertain to each element of Plaintiff's prima facie case.

■ First, the court must identify the type of statutorily protected expression in which Plaintiff claims she engaged. An employee's filing of a discrimination charge with the EEOC or informal allegations of discrimination can constitute protected expression under the ADA. *See Donnellon v. Fruehauf Corp.,* 794 F.2d 598, 600–601 (11th Cir.1986); *see also* 42 U.S.C. § 12203(a); *Alford v. City of Montgomery,* 879 F.Supp. 1143, 1152 (M.D.Ala. 1995), *aff'd,* 79 F.3d 1160 (11th Cir.1996); *Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1333 (11th Cir.1998). A plaintiff engages in "statutorily protected expression" even when he or she protests an employer's conduct which is actually lawful, so long as he or she demonstrates "a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Little v. United Technologies,* 103 F.3d 956, 960 (11th Cir.1997).

■ While Plaintiff's allegations are muddled, it appears, and the court so finds, that Plaintiff claims she was terminated (1) for filing an EEOC charge in October 1997 (Compl. at 1), and (2) for contacting the ASEA in August 1997 and complaining that the ABC Board had not complied with Dr. Bell's restrictions. (Am. Compl.¶ 2.) The ABC Board does not dispute that Plaintiff filed an EEOC charge complaining of the ABC Board's alleged failure to accommodate Plaintiff's disability. (Br. at 2.) The ABC Board also does not dispute that, in August 1997, McCooey with the ASEA received a complaint from Plaintiff and that McCooey addressed the complaint in a letter to Brown. (*Id.* at 7.) The ABC Board also has not argued that Plaintiff filed an EEOC charge and complained to the ASEA in bad faith. Based

on the foregoing, the court finds that Plaintiff has demonstrated that she engaged in statutorily protected expression.

■ Second, the evidence is uncontroverted that the ABC Board fired Plaintiff on July 2, 1998, thus, subjecting her to an adverse employment action. (Br. at 2, Ex. B.) However, as mentioned above, the ABC Board claims that Plaintiff cannot meet the second element because, when she filed her Complaint on June 30, 1998, she had not yet been fired. (*Id.* at 3.) The ABC Board points out that, as of June 30, 1998, it had only notified Plaintiff of its intent to fire Plaintiff. (*Id.*) However, for the following reason, the court disagrees with the ABC Board's argument regarding the timing of Plaintiff's termination and the filing of her Complaint in this action.

On August 3, 1999, the date Plaintiff filed her Amended Complaint, she not only incorporated her ADA retaliation claim, but also included her ADA retaliation claim in Count 1 of her Amended Complaint. (Am.Compl.¶¶ 1, 33.) Because there is no question that, as of August 3, 1999, Plaintiff had been terminated, the court finds that the ABC Board's argument is moot. In other words, as of August 3, 1999, the court finds that the ABC Board had subjected Plaintiff to an adverse employment action by terminating her. Accordingly, the court finds that Plaintiff has satisfied the second element of her prima facie case.

■ Third, to demonstrate a connection between the protected activity and the adverse employment action, a plaintiff only has to "establish that the protected activity and the adverse action were not wholly unrelated." *Simmons v. Camden County Bd. of Educ.,* 757 F.2d 1187, 1189 (11th Cir.1985). "[A] plaintiff satisfies this element if he provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this

awareness and the adverse employment action." *Farley v. Nationwide Mutual Ins., Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) (holding that, where the plaintiff filed an EEOC charge on May 19, 1995 and was terminated seven weeks later, "this timeframe," coupled with the defendant's knowledge of the charge, was "sufficiently proximate to create a causal nexus for purposes of establishing a prima facie case") (citing *Clover v. Total System Services, Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999)); *see also Donnellon*, 794 F.2d at 600–601.

In moving for summary judgment, the ABC Board has not challenged or addressed the third prong of Plaintiff's prima facie case. The ABC Board has set forth no reason, either explicitly or implicitly, as to why summary judgment is appropriate as to this element. Based on the ABC Board's failure to address the causal connection inquiry, the court finds that the ABC Board has not met its burden in moving for summary judgment. Namely, the court finds that the ABC Board has failed to "inform[ ] the district court of the basis for its [M]otion" as to the third element of Plaintiff's prima facie case. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Fitzpatrick*, 2 F.3d at 1115–1116. Therefore, the court assumes for purposes of summary judgment that Plaintiff has established this element.

Now that the court has determined that the prima facie elements of retaliation have been satisfied, the burden shifts to the ABC Board to " 'articulate' a legitimate, nondiscriminatory reason for its action." *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1267 (11th Cir.1999) (quoting *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089). As reasons for terminating Plaintiff, the ABC Board asserts that Plaintiff violated its work rules. First, the ABC contends that, on June 20, 1998, Plaintiff assaulted a co-

worker, Watkins. Second, the ABC Board contends that Plaintiff engaged in inappropriate and unbecoming conduct with customers in the store. (Br. at 4–6.) The ABC Board points out that the hearing officer agreed with its termination decision. (*Id.*) Thus, the ABC Board states that its decision to fire Plaintiff, when combined with the hearing officer's concurrence, is "sufficient to rebut the presumption of retaliatory discharge." (*Id.* at 6.) The court agrees and finds that the ABC Board satisfies its "exceedingly light" burden of producing evidence of legitimate non-discriminatory reasons for Plaintiff's termination. *Perryman*, 698 F.2d at 1142. At the very least, the court finds that the ABC Board had a good faith belief that Plaintiff violated company policies. *See Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1363 n. 3 (11th Cir.1999) ("An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct.").

■ The relevant issue now becomes whether Plaintiff can meet her "burden of persuading the court that the proffered reason[s] for the employment decision [are] a pretext for intentional discrimination." *Jordan v. Wilson*, 649 F.Supp. 1038, 1054 (M.D.Ala.1986). To carry her burden, Plaintiff must "create a genuine issue of material fact as to whether the reasons advanced are pretextual." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1332 (11th Cir.1998). At the summary judgment stage, when the employer justifies the discharge by relying on a work rule violation, the plaintiff may prove pretext by proffering "evidence (1) that [he or] she did not violate the cited work rule, or (2) that if [he or] she did violate the rule, other employees outside the protected class, who engaged in similar acts, were

not similarly treated." [11] *Damon*, 196 F.3d at 1363.

■ In arguing pretext, Plaintiff has submitted evidence that the ABC Board's proffered reasons for her termination are subterfuge, because the actions of which she was accused did not occur. Thus, Plaintiff's evidence relates to the first *Damon* argument.[12] Namely, at her deposition, Plaintiff states as follows:

A. [The ABC Board] accused me of attacking a coworker. Having improper physical contact with, you know, customers in a sexual nature.

Q. And you are saying you did not try to attack the coworker or did not have the improper contact with a customer?

A. I was signing out.

Q. I'm sorry?

A. I was signing out. I was getting ready to leave to go home, counting my money. And I guess she just figured that I was going to attack her, which that's not the case. It involved a shouting match.

11. As further explained by the Eleventh Circuit,
> this framework is simply used to assess whether a plaintiff has presented sufficient evidence to establish pretext—that is, the employer has not given an honest explanation of the employer's behavior—and thereby reach a jury on the ultimate question of discrimination. This framework, however, does not vitiate a plaintiff's ultimate burden to prove by a preponderance of the evidence that an employer terminated the plaintiff based on a discriminatory motive.
*Damon*, 196 F.3d at 1363 n. 3.

12. The court notes that Plaintiff also asserts that, at trial, she "intends to show that the firing of [ ][P]laintiff was severe disciplinary action and that it is inconsistent punishment when compared to action taken by [ ] [the ABC Board] as against other employees for similar or worse acts." (Resp. at 7.) Thus, Plaintiff attempts to oppose summary judgment based on the second *Damon* argument as well. However, Plaintiff has submitted no evidence in support of this contention, as required under Rule 56 of the Federal Rules of Civil Procedure.

Q. And the improper physical contact?

A. Well, this particular guy was told not to come into the store. And whenever the supervisor or whenever I was alone in the store, he would come and chase me around the store. Kiss my boots or whatever. But he was told not to, you know, bother me. And I was afraid, because a lot of times I was alone. I felt like there was nothing I could do.

(Pl.'s Dep. at 49–50.)

The court finds that Plaintiff's deposition testimony constitutes evidence that Plaintiff did not violate the ABC Board's work rules. At this stage, the court must regard the facts submitted by Plaintiff as true since those facts are supported by evidentiary material, i.e., deposition testimony. *See Adickes*, 398 U.S. at 157, 90 S.Ct. 1598; *see also Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir.1992). The court emphasizes that its duty at this juncture is not to weigh the evidence, question the accuracy of the evidence, or make credibility determinations. *See*

Counsel for Plaintiff does not appear to understand her duty at the summary judgment stage. To oppose a motion for summary judgment, the non-moving party must actually present some evidence, either affidavits, documentary evidence, or prior testimony, which demonstrates the existence of a disputed issue of material fact. *See Celotex Corp.*, 477 U.S. at 323–25, 106 S.Ct. 2548; *see also Raney v. Vinson Guard Service, Inc.*, 120 F.3d 1192, 1198 (11th Cir.1997) ("Summary judgment cannot be avoided ... based on hunches unsupported with significant probative evidence."); *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) ("The party opposing summary judgment may not rely simply on ... unsupported assertions."). Mere statements by counsel do not constitute evidence in opposition to a summary judgment motion. Thus, the court has not considered Plaintiff's argument under *Damon, supra*, that other similarly situated non-protected employees engaged in similar misconduct, but were disciplined less harshly than Plaintiff.

*Anderson,* 477 U.S. at 249, 106 S.Ct. 2505; *see also Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348. Rather, "[t]he only issue to be considered by the judge at summary judgment is whether the plaintiff's evidence has placed material facts at issue." *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 921 (11th Cir.1993). The court finds that Plaintiff has met her burden in opposing summary judgment by denying under oath that she committed the work rules at issue. Based on the foregoing, the court finds that Plaintiff has presented evidence which would allow a reasonable jury to disbelieve the ABC Board's contention that it terminated Plaintiff because she violated the ABC's work rules.[13] Accordingly, the court finds that factual issues remain on Plaintiff's ADA retaliation claim, thus, precluding summary judgment.

### III. Plaintiff's ADA Failure–To–Accommodate Claim

Plaintiff claims that, in violation of the ADA, the ABC Board discriminated against her by failing to reasonably accommodate her disabilities. (Am.Compl.¶¶ 3, 8, 19–21, 24–26, 32–34.) Plaintiff sets forth three grounds in support of her ADA failure-to-accommodate claim. In sum, these grounds are as follows. First, Plaintiff asserts that Dr. Bell diagnosed Plaintiff with several mental impairments, including post-traumatic stress syndrome and panic disorder, and that her mental impairments limited the tasks she could perform at work. (Am.Compl. ¶ 8; Resp. at 2.) Plaintiff emphasizes that Dr. Bell informed the ABC Board in August 1997 that Plaintiff "needs" to work the day shift only "for a period of approximately one month," to be "restricted from ever depositing monies from the store," and to not work alone. (Am.Compl., Exs. C and D.) Plaintiff asserts that on several occasions the ABC Board violated these restrictions, i.e., failed to accommodate Plaintiff. For example, Plaintiff states that, when she returned to work on August 18, 1997, after the armed robbery, her manager left her alone sweeping the store parking lot and locked her out of the store.

Second, Plaintiff asserts that Dr. Beauchamp diagnosed her with "fatigue syndrome." (Pl.'s Dep. at 39, 41–42.) As a result of her "fatigue syndrome," Plaintiff states that, in a "note[ ]," Dr. Beauchamp imposed restrictions on Plaintiff prohibiting her from lifting and pushing. (*Id.* at 44.) However, despite the ABC Board's knowledge of these restrictions, Plaintiff states that the ABC Board "didn't accommodate" her. (*Id.* at 43.) For instance, she says that she was "still told to unload the truck, work to twelve thirty midnight, doing things in the parking lot." (*Id.*)

---

**13.** While the court is prohibited from making credibility assessments at this stage of the litigation, the court warns that, if at trial, the evidence reveals that Plaintiff presented deceptive deposition testimony solely to survive summary judgment, the court will entertain a defense motion for Rule 11 sanctions. *See* FED.R.CIV.P. 11. The court notes with emphasis that it has carefully reviewed the entire record and, in particular, the hearing officer's October 23, 1998 Order and the "undisputed evidence" presented at the hearing. (Br., Ex. D, 1–16.) The hearing officer's Order reveals that at least four witnesses testified that Plaintiff had assaulted a coworker and/or had engaged in promiscuous behavior while on duty. (*Id.*)

Rule 11 provides that an attorney or *pro se* litigant certifies that "to the best of his [or her] knowledge, information, and belief formed after reasonable inquiry [a complaint] is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." FED.R.CIV.P. 11. Rule 11 authorizes a district court to impose sanctions when a party presents a pleading or motion for an improper purpose, presents allegations or factual contentions lacking in evidentiary support or unlikely to have evidentiary support after a reasonable opportunity for investigation or proffers denials of factual contentions unwarranted by the evidence. *Id.*

Third, in her Amended Complaint, Plaintiff states that, in October 1997, Drs. Beauchamp and McDowell treated Plaintiff for physical injuries resulting from the armed robbery, including shoulder, arm, chest and back trauma. (Am.Compl.¶ 26.) During her deposition testimony, Plaintiff did not rely on these physical injuries in articulating her failure-to-accommodate claim. (Pl.'s Dep. at 39–47.) She relied solely on Dr. Beauchamp's alleged diagnosis for "fatigue syndrome." (*Id.*) Yet, in her Response to the ABC Board's Motion For Summary Judgment, Plaintiff seeks to resurrect this claim stating as follows:

> [O]n or about October 24, 1997, [ ][the] ABC Board's agents, [ ] Brown and [ ] White, were presented with letters from both Dr. Beauchamp and Dr. McDonald, outlining [ ] Plaintiff's disabilities and restrictions, whereby said disabilities and restrictions continued to be ignored as evidenced by [ ][the] ABC Board's act by and through her supervisors of making the plaintiff cut the grass and unload the trucks, ect.. [sic], despite the restriction placed by her doctor not lift, push or pull anything dated October 21, 1997.

(Resp. at 4.)

■■■ To establish a prima facie case of disparate treatment under the ADA, Plaintiff must prove each of the following three elements: (1) that she is disabled; (2) that she is qualified to serve as a cashier, "with or without some reasonable accommodation," despite her disability; and (3) that she "has suffered an adverse employment action because of [her] disability (i.e., that [she] has suffered employment discrimination)." *Doe v. Dekalb County School Dist.*, 145 F.3d 1441, 1445 (11th Cir.1998); *see also Morisky v. Broward County*, 80 F.3d 445, 447–49 (11th Cir.1996).

Moving for summary judgment on Plaintiff's failure-to accommodate claims, the ABC Board argues that Plaintiff has not proven that she has a qualifying disability under the ADA. (Br. at 9–12.) However, assuming Plaintiff can demonstrate otherwise, the ABC Board asserts that Plaintiff cannot show that the ABC Board failed to accommodate her alleged disability or that the ABC Board intentionally discriminated against her based on a disability. (*Id.* at 9–12.) Further, the ABC Board argues that, "[u]ntil receipt of Plaintiff's [R]esponse[,] the [ABC] Board was unaware that [Plaintiff] was making a claim for the Board's failure to accommodate disabilities or restrictions relating to lifting, pushing or pulling." (Reply at 2.)

Again, Plaintiff has failed to address any of the ABC Board's arguments. Also, Plaintiff has not cited or discussed the law applicable to her failure-to-accommodate claim. Plaintiff merely asserts that the "allegations for which [ ][P]laintiff will not recite such redundant allegations" demonstrate that factual disputes exist, thus, precluding summary judgment. (Resp. at 6.)

For the following reasons, the court finds that Plaintiff has failed to show that she has a disability within the meaning of the ADA. Thus, Plaintiff cannot meet the first prong of the prima facie case for a failure-to-accommodate claim. It is, therefore, unnecessary for the court to determine whether Plaintiff is a qualified individual or whether she was subjected to unlawful discrimination, as required under the second and third elements of Plaintiff's prima facie case.

### A. ADA Disability

To prove the first prima facie element, Plaintiff must show that she is protected by the ADA, i.e., that she is disabled. *See Dekalb County School Dist.*, 145 F.3d at 1445. The ADA defines "disability" as follows:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of an individual;

(B) a record of such impairment; or,

(C) being regarded as having such impairment.

42 U.S.C. § 12102(2) (emphasis added). A plaintiff is "disabled" within the meaning of the ADA if he or she satisfies any one of these three definitions. *See Hilburn*, 181 F.3d at 1226.

Initially, the court must determine under which definition of "disability" Plaintiff proceeds. Plaintiff has not identified the subsection she claims encompasses her alleged disabilities. In fact, she had not cited the ADA's definition of disability in any of her pleadings or included any legal authority in her Response. However, the record demonstrates that Plaintiff is focusing on her doctors' diagnoses that she suffered from physical and mental impairments. That is, she claims she has "actual" disabilities. *Sutton v. United Airlines, Inc.*, 527 U.S. 471, ——, 119 S.Ct. 2139, 2151 (1999) ("[T]o fall within" the definition under § 122102(2)(A) "one must have an actual disability."). Plaintiff has not asserted in any of her pleadings that she is disabled under either of the definitions of "disability" set forth in 42 U.S.C. §§ 12102(2)(B) & (C). Namely, Plaintiff has not alleged or inferred that she "has been misclassified as having … a mental or physical impairment" under § 12102(2)(B). Likewise, Plaintiff has not asserted that, under § 12102(2)(C), the ABC Board "treated" her as having an impairment that substantially limited a major life activity even though she did not, in fact, have such an impairment. Therefore, the court finds that Plaintiff is proceeding under § 12102(2)(A).

■ Now, the court must determine whether Plaintiff has presented evidence of a disability under § 12102(2)(A). The

Supreme Court of the United States set forth a three-step inquiry for determining whether a plaintiff is disabled within the meaning of 42 U.S.C. § 12102(2)(A). *See Bragdon v. Abbott*, 524 U.S. 624, 631, 118 S.Ct. 2196, 2202, 141 L.Ed.2d 540 (1998). Under *Bragdon*, the court must (1) determine whether a plaintiff suffers from a mental or physical impairment within the meaning of the ADA, (2) "identify the life activity upon which" a plaintiff "relies," and (3) determine "whether the impairment substantially limited the major life activity." *Id.* The court addresses each of these three steps.

### 1. *Physical Or Mental Impairment*

As discussed *supra* at 1259–60, Plaintiff complains of both physical and mental impairments. The court finds that Plaintiff has set forth the following three categories of impairments: (1) mental impairments, as diagnosed by Dr. Bell in August 1997; (2) physical impairments, involving strain to Plaintiff's arm, shoulder, chest and back, as diagnosed by Drs. Beauchamp and McDowell in October 1997; and (3) a physical impairment called "fatigue syndrome," allegedly diagnosed by Dr. Beauchamp.

The EEOC regulations define "physical or mental impairment" as follows: [14]

(1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or

(2) Any mental or psychological disorder, such as mental retardation, organic

---

**14.** While the ADA does not define all terms contained in the statute, including "physical or mental impairment," the court "may rely upon the regulations promulgated by the Equal Employment Opportunity Commission for guidance." *Gordon v. E.L. Hamm & Assoc., Inc.*, 100 F.3d 907, 911 (11th Cir.1996) (citing 42 U.S.C. § 12116).

brain syndrome, emotional or mental illness, and specific learning disabilities.

29 C.F.R. § 1630.2(g)(1) & (2).

 As to each of Plaintiff's three categories of impairments, delineated above, the ABC Board states as follows. First, the ABC Board acknowledges that "[t]he documentation provided by" Dr. Bell "indicate[s] that as a result of [the] robbery [Plaintiff] was caused to suffer numerous mental ailments such as post-traumatic stress disorder, general anxiety disorder, panic disorder and major depression disorder." (Br. at 10.) At no time has the ABC Board challenged the validity of Dr. Bell's diagnoses of Plaintiff. Thus, the court finds that Plaintiff has satisfied the first *Bragdon* step of demonstrating that she suffers from mental impairments.

 Second, the ABC Board recognizes that Drs. Beauchamp and McDowell treated Plaintiff in October 1997 for physical symptoms stemming from the robbery. (*Id.* at 1–2.) However, the ABC Board asserts that Plaintiff did not mention or complain of these physical symptoms during her deposition. Thus, in sum and substance, the ABC Board contends that Plaintiff abandoned this claim during her deposition and, in opposing summary judgment, cannot assert that her physical trauma constitutes an ADA disability that prohibited her from pushing, lifting and pulling. (Reply at 1–2.)

The court agrees with the ABC Board. During her deposition, Plaintiff made clear that the physical symptom upon which she was relying in support of her failure-to-accommodate claim was Dr. Beauchamp's conclusion that Plaintiff was suffering from "fatigue syndrome." (Pl.'s Dep. at 42–43.) In foregoing reliance on her physical injuries pertaining to her arm, shoulder, chest and back, Plaintiff cannot resurrect this argument by re-asserting it in her Response to the ABC Board's Motion For Summary Judgment. *See Andree v. Ashland Co.,* 818 F.2d 1306, 1314 n. 11 (7th Cir.1987) ("A civil plaintiff is barred from injecting new allegations into his or her case by raising them after the defendant has filed a motion for summary judgment, for such a strategy fails to give adequate or fair warning as to the claims the defendant must address and against which it must defend."). Alternatively, and for completeness of the record, the court finds that Plaintiff also cannot satisfy the third *Bragdon* step. The court will discuss this alternative ground in Subsection III.A.3 below.

Third, the ABC Board disputes that Plaintiff has presented evidence sufficient to demonstrate that she suffered from "the disability of fatigue syndrome." (Br. at 10, citing Pl.'s Dep. at 42.) The ABC Boards points out that, in support of her claim that she suffers from "fatigue syndrome," Plaintiff has proffered only bald assertions that Dr. Beauchamp diagnosed her with "fatigue syndrome" and recorded this diagnosis in a note. (Br. at 10.) Plaintiff has not submitted, and the ABC Board is not aware of, any medical documentation to this effect. Without competent evidence to support Plaintiff's assertion, the ABC Board asserts that Plaintiff has failed to demonstrate that she suffers from the physical impairment of "fatigue syndrome." (*Id.*) The court agrees with the ABC Board and finds that the only evidence supporting Plaintiff's "fatigue syndrome" claim constitutes inadmissible hearsay. Thus, the court finds that Plaintiff has not met her burden of showing that she suffers from a physical impairment, as her statements are inadmissible hearsay. *See Macuba v. Deboer,* 193 F.3d 1316, 1323–24 (11th Cir.1999).

In *Macuba,* the Eleventh Circuit held that the district court erred in denying summary judgment because it relied on "rank hearsay." *Id.* at 1322, 1325. The Eleventh Circuit explained as follows:

The general rule is that inadmissible hearsay "cannot be considered on a motion for summary judgment." Rule 56(e) of the Federal Rules of Civil Procedure requires that "affidavits" that support or oppose summary judgment motions "shall be made on personal knowledge, [and] shall set forth such facts as would be admissible in evidence." This rule also applies to testimony given on deposition.

Some courts, including our own, appear to have restated the general rule to hold that a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be "reduced to admissible evidence at trial" or "reduced to admissible form." These courts have coined these phrases from language appearing in the Supreme Court's decision in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), which held that a nonmoving party, in opposing a motion for summary judgment, need not produce affidavits, but may refer the district court to "pleadings, depositions, answers to interrogatories, and admissions on file," as provided by Fed.R.Civ.P. 56(c).

We believe that the courts have used the phrases "reduced to admissible evidence at trial" and "reduced to admissible form" to explain that the out-of-court statement made to the witness (the Rule 56(c) affiant or the deposition deponent) must be admissible at trial for some purpose. For example, the statement might be admissible because it falls within an exception to hearsay rule, or does not constitute hearsay at all (because it is not offered to prove the truth of the matter asserted), or is used solely for impeachment purposes (and not as substantive evidence).

*Id.* at 1322–24.

■ Applying *Macuba* to the case at hand, the court finds that Plaintiff's statements regarding her "fatigue syndrome" would not be admissible at trial for any purpose. *See id.* at 1324. First, it is clear that Plaintiff is offering the diagnosis and statements allegedly made by Dr. Beauchamp for their truth, i.e., that Plaintiff had a disability called "fatigue syndrome." *See* FED.R.EVID. 801(c) (defining hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"). Second, none of Plaintiff's statements are admissible under any exception to the hearsay rule. *See* FED.R.EVID. 803, 804; *see also Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 & 564 (7th Cir.1996) (concluding that deposition testimony detailing physician's statement to patient was hearsay and did not fall within Rule 803(4)'s exception to the hearsay rule: Rule 803(4) "excepts statements made by a person seeking medical attention to the person providing that attention. Rule 803(4) does not purport to except, nor can it reasonably be interpreted as excepting, statements by the person providing the medical attention to the patient."). Third, even if the statements made by Dr. Beauchamp could be used to impeach him in the event he testified at trial, these statements could not be admitted substantively. *See Macuba*, 193 F.3d at 1324.

Because the court finds that Plaintiff's statements concerning her alleged diagnosis by Dr. Beauchamp constitute inadmissible hearsay, the court cannot rely upon said statements in ruling on the ABC Board's Motion For Summary Judgment. Without Plaintiff's hearsay statements, the record is void of any evidence to support Plaintiff's assertion that she suffers from "fatigue syndrome." For instance, there is no affidavit or deposition testimony from Dr. Beauchamp. Assuming Plaintiff did suffer from "fatigue syndrome," she very easily could have submitted admissible evidence through Dr. Beauchamp's affidavit

**1264**

or deposition testimony. Accordingly, the court finds that Plaintiff has failed to demonstrate or raise a genuine issue of fact as to whether she suffered from a physical impairment called "fatigue syndrome."[15] Therefore, summary judgment is due to be granted as to this claim.

### 2. Major Life Activity

Under the second *Bragdon* step, the court must identify the major life activity Plaintiff contends was affected by her mental impairments. "Major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). "Other major life activities could include lifting, reaching, sitting, or standing." *Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 726 n. 7 (5th Cir.1995).

Plaintiff does not expressly identify the major life activity upon which she relies. However, the crux of Plaintiff's ADA claim is that the restrictions imposed by Dr. Bell affected her ability to perform her job. Plaintiff has not pointed to or alluded to any other activity. Thus, the court concludes that the major life activity of working is at issue in this case. Accordingly, the court must now determine whether Plaintiff was substantially limited in the major life activity of working because of her mental impairments. (Resp. at 2; Am. Compl., Exs. C and D.)

### 3. Substantial Limitations

Under the third step, a court must determine whether a plaintiff's physical or mental impairments substantially limit a major life activity. "Merely having a physical [or mental] impairment is insufficient to be covered by the ADA." *Schwertfager v. City of Boynton Beach,* 42 F.Supp.2d 1347, 1357–58 (S.D.Fla.1999).

A plaintiff "must provide some evidence beyond the mere existence and impact of a physical [or mental] impairment to survive summary judgment." *Swain v. Hillsborough County School Board,* 146 F.3d 855, 858 (11th Cir.1998).

First, the court will address the substantial limitation prong in regard to Plaintiff's mental impairments. In other words, the court will determine whether Plaintiff has created a triable issue of fact that her mental impairments "substantially limit" the major life activity of "working." 42 U.S.C. § 12102(2)(A). For the reasons that follow, the answer to this question is "No." Second, as discussed in Section III. A.1., above, the court will state its reasons for finding that, even assuming Plaintiff's physical injuries stemming from the armed robbery are physical impairments, Plaintiff cannot satisfy the third *Bragdon* step.

#### (a) Plaintiff's Mental Impairments

"When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." *Sutton v. United Airlines, Inc.,* 527 U.S. 471, ——, 119 S.Ct. 2139, 2151 (1999). As the *Sutton* Court noted, "the EEOC uses a specialized definition of the term 'substantially limits' when referring to the major life activity of working." *Id.* Under the EEOC regulations, "substantially limits" means "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i); *see also Sutton,* 527 U.S. at ——, 119 S.Ct. at 2151 (holding that the inability to be an airline

**15.** Additionally, the court finds that the lack of competent and admissible evidence in the record prevents Plaintiff from satisfying the second and third *Bragdon* steps.

pilot does not support the claim that the plaintiff has a substantially limiting impairment); *see also Murphy v. United Parcel Service, Inc.,* 527 U.S. 516, ——, 119 S.Ct. 2133, 2138, 144 L.Ed.2d 484 (1999) ("[T]o be regarded as substantially limited in the major life activity of working, one must be regarded as being precluded from more than a particular job.").

▮ The ABC Board argues that Plaintiff is not substantially limited, or "significantly affected," in her ability to work based on Dr. Bell's diagnosis and restrictions. (Br. at 10.) In other words, the ABC Board contends that there is an absence of evidence in the record that Plaintiff's mental impairments substantially limited her ability to work. (*Id.*) For the reasons that follow, the court agrees with the ABC Board.

Plaintiff has offered no evidence, nor made any argument, that she was unable to perform a broad class of jobs because of her mental impairments. Rather, she only complains that she needed accommodation to perform her job as a cashier. At most, Plaintiff's evidence demonstrates that her mental impairments prohibited her from performing only one particular job. *Sutton* and *Murphy, supra,* plainly require Plaintiff to prove more than the inability to do one job. Thus, the court finds that Plaintiff's evidence is insufficient as a matter of law to prove that she is substantially limited in the major life activity of working. *See Murphy,* 119 S.Ct. at 2139; *see also Swain,* 146 F.3d at 858 ("Although a plaintiff seeking recovery under the ADA is not required to provide a comprehensive list of jobs which she cannot perform, the person must provide some evidence beyond the mere existence and impact of a physical impairment to survive summary judgment.").

(b) Plaintiff's Physical Injuries To Her Arm, Shoulder, Chest And Back

▮ As stated previously, assuming *arguendo* that Plaintiff's physical injuries to her arm, shoulder, chest and back are impairments under § 12102(2)(A), Plaintiff has not shown that these impairments caused substantial limitations on major life activities. Plaintiff identifies the major life activities as pushing, pulling and lifting, and the court will assume without deciding that these tasks constitute major life activities.

One factor the court must examine in "determining whether an individual is substantially limited in a major life activity is the permanence or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2)(iii). "[T]emporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities." 29 C.F.R. pt. 1630, App. § 1630.2(j). For the reasons that follow, the court finds that Plaintiff has failed to present any evidence that her physical injuries arising from the armed robbery were permanent and/or chronic.

Here, in October 1997, Plaintiff sought treatment from Drs. Beauchamp and McDowell for physical pain in her arm, shoulder, back and chest arising from the August 1, 1997 armed robbery. While her physicians' reports do not indicate a projected healing time for her physical injuries (Am.Compl., Ex. F), Plaintiff's own admissions *and* omissions are telling. Namely, in the Tasks Statements Plaintiff completed on March 31, 1998, she indicated that she can "fully" perform the following "custodial and maintenance duties": "[S]weeping, mopping, and waxing floors; dusting shelves and bottles; washing windows; policing outside areas; bundling boxes, etc.; replacing light bulbs and ballasts (when required), lubricating door locks, etc." (Dillon Aff., Ex. 1.) Additionally, the undisputed evidence shows that also on March 31, 1998, in discussing her job assignments with Brown, Plaintiff "did not indicate ... that she felt she had any limitations or restrictions which would

need to be considered in her job assignment." (Brown Aff. at 1.) Thus, at least as of March 31, 1998, the evidence reveals that Plaintiff gave no indication that the alleged physical pain in her arm, shoulder, chest, and back limited her from performing tasks that, to some extent, involve pushing, pulling and lifting.

Moreover, during her deposition on December 2, 1999, Plaintiff never complained of or even mentioned her arm, shoulder, chest and back pain when discussing her alleged physical impairments. Thus, based on the evidence in the record, Plaintiff's physical impairments lasted, at the most, from the date of the armed robbery, August 1, 1997, to March 31, 1998. Based on these facts, the court finds Plaintiff's physical impairments relating to her arm, shoulder, chest and back were temporary physical impairments at most. Therefore, the court finds that Plaintiff has not presented evidence, which if believed at trial, would show that the alleged physical impairments (her arm, shoulder, back and chest condition) are permanent, thereby substantially limiting a major life activity.[16] *See Colwell v. Suffolk County Police Dep't,* 158 F.3d 635, 646 (2d Cir.1998) (one month hospital stay followed by six month home recuperation, coupled with non-particularized and unspecific limitations upon return to work, did not constitute substantial impairment in ability to work); *see also*

*Sanders v. Arneson Prods.,* 91 F.3d 1351, 1354 (9th Cir.1996) (three-and-a-half month impairment with minimal residual effects was not substantially limiting).

### B. Summary

In sum, the court finds that Plaintiff has failed to demonstrate that she has either a physical or mental impairment that substantially limits a major life activity. Thus, Plaintiff has not proved that she is disabled within the meaning of the ADA. Accordingly, the court finds that summary judgment is due to be entered in favor of the ABC Board on Plaintiff's failure-to-accommodate claim.

### IV. Plaintiff's Title VII And ADA Hostile Work Environment Claims

In her Amended Complaint, Plaintiff asserts that the ABC Board, through its supervisors, "created a hostile work environment in violation of Title VII, by subjecting her to perform duties that further agravated [sic] her physical and medical disability and accussing [sic] her of violating work policies which such conduct affecting a term, condition or privilege of employment based on her race, sex and disability in order to terminate her employment." (Am.Compl. ¶¶ 10, 33; Resp. at 3.) While Plaintiff's allegations are ill-defined, the court construes them as alleg-

---

16. Moreover, in going one step further and assuming her physical injuries were permanent under the ADA, the court has not uncovered any evidence revealing that Plaintiff requested a reasonable accommodation based on these alleged physical impairments, as required under the ADA. *See Gaston v. Bellingrath Gardens & Home, Inc.,* 167 F.3d 1361, 1363 (11th Cir.1999) ("[A] plaintiff cannot establish a claim under the Rehabilitation Act alleging that the defendant discriminated against him [or her] by failing to provide a reasonable accommodation unless he [or she] demanded such an accommodation."). Likewise, Plaintiff has not pointed the court to any such evidence. First, between August 1, 1997, the date Plaintiff was robbed, and November, 13, 1997, Plaintiff worked a "total of less than ten work days." (Dillon Aff. at 2.)

There in no evidence in the record that Plaintiff requested a reasonable accommodation for these physical injuries during this time period. Second, from November 13, 1997, to March 31, 1998, the record is undisputed that Plaintiff did not work, but was on leave for reasons pertaining to her mental impairments. (Dillon Aff. at 2.) Thus, during this time period, there was no need for Plaintiff to request a reasonable accommodation, and no evidence in the record demonstrating that she did. Third, as indicated above, as of March 31, 1998, Plaintiff informed the ABC Board that she had did not have any physical limitations. There is no evidence that, after March 31, 1998, Plaintiff requested a reasonable accommodation.

ing three separate claims: (1) a disability-based hostile work environment claim under the ADA; (2) a Title VII hostile work environment claim based on race; and (3) a Title VII hostile work environment claim based on sex.

The ABC Board asserts that the court lacks jurisdiction over Plaintiff's hostile work environment claims, whether brought under Title VII or the ADA. (Br. at 13–14; Reply at 2.) Namely, the ABC Board argues that Plaintiff is procedurally barred from bringing Title VII or ADA hostile work environment claims because Plaintiff failed to include these theories of liability in her EEOC charge. (*Id.*) Plaintiff has not addressed the ABC Board's argument, stating only in a conclusory fashion that factual disputes exist as to all of her claims. For the reasons that follow, the court agrees with the ABC Board.

The court finds that it lacks jurisdiction to consider Plaintiff's Title VII and ADA hostile work environment claims because Plaintiff has failed to exhaust her administrative remedies as to these claims. While Plaintiff filed an EEOC charge prior to commencing this lawsuit, the court finds that Plaintiff's claims alleging hostile work environment, whether brought under Title VII or the ADA, exceed the scope of her EEOC charge. (Am.Compl., Ex. G.)

■ Filing a charge with the EEOC is a prerequisite to a private civil action under Title VII or the ADA. *See* 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e–5(e)(1), which requires that, in Title VII cases, aggrieved employees file an EEOC charge which states the date, place, and circumstances of the alleged unlawful employment practice). Where a plaintiff has filed an EEOC charge, he or she then may commence a lawsuit on all issues sufficiently "like or related" to those specified in the EEOC charge. *IMPACT v. Firestone*, 893 F.2d 1189, 1196 (11th Cir.1990).

The Court of Appeals for the Eleventh Circuit has explained as follows:

> As long as allegations in the judicial complaint and proof are "reasonably related" to charges in the administrative filing and "no material differences" between them exist, the court will entertain them. As we have noted ..., "the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."

> Judicial claims which serve to amplify, clarify, or more clearly focus earlier EEO complaints are appropriate. Allegations of new acts of discrimination, offered as the essential basis for the requested judicial review are not appropriate.

*Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir.1989) (citations omitted); *see also Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir.1970) (holding that, in determining the scope of the EEOC charge, the court should look to the "factual statement contained therein," which is the "crucial element of a charge of discrimination").[17]

■ Here, the Parties do not dispute that Plaintiff filed an EEOC charge in October 1997 against the ABC Board. (Am.Compl., Ex. G.) Contained in her charge are explicit and clear assertions that the ABC Board failed to reasonably accommodate Plaintiff's alleged disability in violation of the ADA. (*Id.*) It is equally clear, and the court so finds, that Plaintiff's EEOC charge does not contain or even allude to an allegation regarding a hostile work environment based upon either Plaintiff's race, sex or alleged disabili-

---

**17.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981.

ty. Thus, the relevant inquiry is: Whether Plaintiff's hostile work environment claims under Title VII and the ADA are "'reasonably related'" to her ADA failure-to-accommodate claims? *Wu,* 863 F.2d at 1547. For the reasons that follow, the court finds that the answer to this question is "No."

First, a hostile work environment claim, whether asserted under the ADA or Title VII, involves a theory of liability and elements of proof separate and distinct from an ADA failure-to-accommodate claim. *See Dekalb County Sch. Dist.,* 145 F.3d at 1445 (setting forth the elements of proof in an ADA failure-to-accommodate case); *Schwertfager v. City of Boynton Beach,* 42 F.Supp.2d 1347, 1366 (S.D.Fla.1999) (stating the elements of proof in hostile work environment cases). Because substantial differences exist between the evidence required to prove these two types of claims, the court finds that Plaintiff's hostile work environment theory is unlike her failure-to-accommodate theory. *See, e.g., Blalock v. Dale County Bd. of Educ.,* 84 F.Supp.2d 1291, 1302–03 (M.D.Ala.1999) (finding that the plaintiff's Title VII sex-based hostile work environment claim exceeded the scope of her EEOC charge, which set forth Title VII claims pertaining solely to gender-based disparate pay and disparate treatment); *Swanson v. Civil Air Patrol,* 37 F.Supp.2d 1312, 1321 (M.D.Ala.1998) (finding that the plaintiff was barred from bringing a sex-based disparate treatment claim where the EEOC charge was limited to claims alleging a sex-based hostile work environment and retaliation).[18] Moreover, Plaintiff's Title VII hostile work environment claims based on race and sex are distinct and unrelated to Plaintiff's ADA failure-to-accommodate claim for an additional reason. Namely, her status as a *black female* is different and unlike from Plaintiff's status as a person with an alleged *disability. See Buffington v. General Time Corp.,* 677 F.Supp. 1186, 1194 (M.D.Ga.1988) (finding that the plaintiff's *age* discrimination claim exceeded the scope of her EEOC charge, which alleged only *race* discrimination); *see also Whittaker v. Dept. Of Human Resources of State of Georgia,* 86 F.R.D. 689 (N.D.Ga. 1980) (holding that a black female could not raise sex discrimination claim in Title VII action where she alleged only race discrimination in her EEOC charge).

Second, there is no evidence in the record concerning the focus or extent of the EEOC investigation, if any. However, the court finds that it is highly unlikely that the EEOC would have uncovered Plaintiff's alleged hostile work environment claims based on race, sex and disability during an investigation of the allegations in Plaintiff's EEOC charge. *See Wu,* 863 F.2d at 1547.

In sum, the court concludes that Plaintiff's hostile work environment claims are not reasonably related to the set of facts that Plaintiff provided in her EEOC charge. Therefore, the court finds that Plaintiff has failed to exhaust her administrative remedies concerning these claims, thus, divesting the court of jurisdiction to hear said claims. Accordingly, the court finds that summary judgment is due to be entered in favor of the ABC Board on Plaintiff's hostile work environment claims brought under the ADA and Title VII.

## V. Plaintiff's State–Law Claims

Plaintiff sets forth two state-law tort claims against the ABC Board, one for

---

18. *See also Nicol v. Imagematrix, Inc.,* 767 F.Supp. 744, 752–54 (E.D.Va.1991) (finding that the plaintiff's claims of sexual harassment and sexually hostile work environment were beyond the scope of her EEOC charge, which alleged that the plaintiff was terminated because she was pregnant); *Ghahramani v. BASF Corp.,* 755 F.Supp. 708, 710–11 (M.D.La.1991) (finding that a plaintiff's claims of racial harassment, inferior treatment, and failure to give pay increases were beyond the scope of the EEOC charge alleging discriminatory demotion and discharge and failure to promote).

slander/defamation and one for outrage. (Am.Compl. at 11–14.) Plaintiff asserts that, under a ratification theory, the ABC Board is liable for the torts of its employees. (*Id.* at 11–12); *see also Mardis v. Robbins Tire & Rubber Co.*, 669 So.2d 885, 889 (Ala.1995) (discussing the ratification theory). The ABC Board has moved for summary judgment on both claims. For the reasons discussed below, the ABC Board argues, and the court agrees, that Plaintiff's defamation and outrage claims cannot survive summary judgment.

### A. Slander/Defamation

Plaintiff has asserted two defamation claims. First, in her Amended Complaint, Plaintiff states that Watkins and Auls "slandered and defamed" Plaintiff by testifying falsely at her termination hearing before the hearing officer. (Am.Compl. at 13; Pl.'s Dep. at 48–49.) Specifically, Plaintiff complains that Watkins and Auls wrongfully "accused [her] of attacking a co-worker" and "[h]aving improper physical contact with ... customers in a sexual nature." (Pl.'s Dep. at 49; Am.Compl. at 13.)

Second, while not raised in her pleadings, Plaintiff attempted to bring a defamation claim based on a new theory during her deposition. She asserted that, when she returned to work in April 1998, her coworkers made fun of her because she was "restricted by the doctors for certain things." (Pl.'s Dep. at 49, 51–52, 65–67; Am.Compl. at 13–14.)

In moving for summary judgment, the ABC Board raises the following grounds. First, the ABC Board argues that Watkins and Auls' testimony during Plaintiff's termination hearing are absolutely privileged and, thus, cannot form the basis of defamation claim. (Br. at 15.) In support of its absolute privilege defense, the ABC Board asserts that, because Watkins and Auls "offered sworn testimony before an Administrative Law Judge at a quasi-judicial

hearing where facts were gathered and a recommendation made to the State of Alabama Personnel Board[,] there can be no recovery by [Plaintiff] for slander." (*Id.* at 15.) Thus, because no cause of action for defamation can lie against either Watkins or Auls, the ABC Board contends that there is no basis upon which to hold the ABC Board liable. (*Id.* at 14.)

Second, the ABC Board points out that Plaintiff's Amended Complaint is limited to allegations that Watkins and Auls, through fabricated testimony, slandered Plaintiff at her termination hearing held on October 9, 1998. (*Id.* at 15–16.) The ABC Board contends that, even assuming that Plaintiff can add a new defamation claim through deposition testimony, Plaintiff has not alleged that the purported defamatory "statements were false," only that "[t]he statements offended her." (*Id.* at 16.)

In response, Plaintiff has not addressed the ABC Board's legal arguments. Plaintiff merely states that "Count ... Two of Plaintiff's Amended Complaint[ ] is ... in dispute." (Resp. at 6.) For the reasons that follow, the court finds that summary judgment is due to entered in favor of the ABC Board.

■■■ "The law of ... slander is discussed generally under the tort of defamation." *Warren v. Birmingham Bd. of Educ.*, 739 So.2d 1125, 1132 (Ala.Civ.App. 1999). To establish a defamation claim, a plaintiff must show the following: (1) "that the defendant was at least negligent"; (2) in "publishing" to a third party; (3) "a false and defamatory statement" concerning the plaintiff; (4) "which is either actionable without having to prove special harm (actionable per se) or (actionable per quod)." *Nelson v. Lapeyrouse Grain Corp.*, 534 So.2d 1085, 1091 (Ala.1988).

■■■ In defamation actions, the determination of "[w]hether a communication is privileged by reason of its character or

the occasion ... is a question of law for the judge." *Webster v. Byrd,* 494 So.2d 31, 34 (Ala.1986). In defamation lawsuits, "absolutely privileged communications" include "those made during legislative or judicial proceedings," *Walker v. Majors,* 496 So.2d 726, 730 (Ala.1986), as well as those "made in the course of quasi-judicial proceedings." *Webster,* 494 So.2d at 34 (holding that a tenured state college teacher's termination hearing and all communications made "in the course of" said hearing were quasi-judicial).

As explained in *Webster,*

> [w]here an administrative proceeding is conducted with the same safeguards as those provided in judicial proceedings, e.g. notice and opportunity to be present, information as to charges made and opportunity to controvert such charges, the right to examine and cross-examine witnesses, the right to submit evidence on one's behalf, the right to be heard in person, and the presence of an objective decision-maker ..., that proceeding is quasi-judicial in nature and statements made in the course of the proceeding should be absolutely privileged.

*Id.* at 34.

 Applying the foregoing principles, the court finds that the ABC Board's defense of absolute privilege precludes Plaintiff from prevailing on her defamation claim concerning Watkins and Auls' testimony at Plaintiff's termination hearing. It is clear, under Alabama law, that termination hearings before the State Personnel Board's hearing officer are quasi-judicial proceedings. *See Creagh v. City of Mobile Police Dept.,* 543 So.2d 698, 700 (Ala.Civ. App.1989); *Sanders v. Broadwater,* 402 So.2d 1035, 1035–36 (Ala.Civ.App.1981). The court emphasizes that, as required under *Webster,* Plaintiff was present at the termination hearing before a neutral and objective hearing officer, where she had an opportunity to be heard and to question

and cross-examine witnesses. (Br., Ex. D.) Based on the foregoing, the court finds that Plaintiff's hearing was a quasi-judicial hearing to which the defense of absolute privilege attaches.

Because Watkins and Auls testified at a quasi-judicial hearing, their statements are absolutely privileged. Therefore, under no theory can Watkins and Auls' testimony support a defamation action against the ABC Board. The court's finding that the defense of absolute privilege applies to Watkins and Auls' testimony absolves the ABC Board from any vicarious liability for their testimony. Accordingly, the court finds that summary judgment is due to be granted on Plaintiff's defamation claim arising from alleged false testimony at her termination hearing.

 Additionally, for two reasons, the court finds that Plaintiff cannot survive summary judgment on her newly-asserted defamation claims that the ABC Board is liable for the alleged defamatory communications made by Plaintiff's co-workers after her return to work in April 1998. First, this defamation claim was not raised or even alluded to in Plaintiff's original or amended complaints. Because there is not a "short and plain statement of the claim" in the Complaint or Amended Complaint, the court finds that it is not properly before the court. FED.R.CIV.P. 8(a)(2). While an amendment to a complaint to add a new legal theory is permissible, the court emphasizes that Plaintiff has never sought an amendment to add this claim. A complaint may not be amended by statements in a deposition. *See* FED.R.CIV.P. 15(a); *see, e.g., Shanahan v. City of Chicago,* 82 F.3d 776, 781 (7th Cir.1996) (A "plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."); *Kansas Mun. Gas Agency v. Vesta Energy Co.,* 840 F.Supp. 814, 821 (D.Kan.1993) (A party cannot alter the basis for recovery in a summary judgment response.).

Second, the court agrees with the ABC Board that Plaintiff has not demonstrated that the statements made by her co-worker's were false, as required under Alabama law. During her deposition, Plaintiff merely asserts that her "self esteem" went "way down" when she "thought about" how her co-workers "ridiculed" her by making comments. (Pl.'s Dep. at 65–67.) Plaintiff points to comments, such as "Watch out for her, she's on Prozac." (*Id.*) While the comments of which she complains were obviously insulting, Plaintiff has not alleged that they were false. For instance, it is undisputed that Plaintiff had been prescribed and was taking Prozac. (*Id.* at 38.) In failing to demonstrate that the alleged statements were false, Plaintiff's defamation claim fails on the merits.

## B. Outrage

In its Motion For Summary Judgment, the ABC Board asserts that Plaintiff cannot substantiate her outrage claim. (Br. at 18–19.) In response, Plaintiff merely avers that there exists a dispute of material fact as to Count 2 of Plaintiff's Amended Complaint "for which [ ][P]laintiff will not recite such redundant allegations." (Resp. at 6.) For the following reasons, the court agrees with the ABC Board.

The tort of outrage is founded on conduct that is "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *American Road Service Co. v. Inmon*, 394 So.2d 361, 365 (Ala.1980). To establish the tort of outrage, a plaintiff must establish the following three elements: "(1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; and (3) the distress was severe." *Moore v. Spiller Associated Furniture, Inc.*, 598 So.2d 835 (Ala.1992) (quot-

ing *Perkins v. Dean*, 570 So.2d 1217, 1219 (Ala.1990)).

The Supreme Court of Alabama has summarized the exceedingly narrow scope of the tort as follows:

[T]he tort of outrage is a very limited cause of action that is available only in the most egregious circumstances. As a consequence, this court has held in a large majority of the outrage cases reviewed that no jury question was presented ... In fact, in the 12 years since *Inmon* was decided, all cases in which this court has found a jury question on an outrage claim have fallen within only three categories: 1) cases having to do with wrongful conduct in the context of family burials ... 2) a case where insurance agents employed heavy handed, barbaric means in attempting to coerce the insured into settling an insurance claim ... 3) a case involving egregious sexual harassment.

*Thomas v. BSE Indus. Contractors, Inc.*, 624 So.2d 1041, 1044 (Ala.1993).

Plaintiff bases her outrage claim on the following allegations: (1) When Plaintiff's co-workers "found out that [Plaintiff] was restricted by doctors for certain things, they would call from another store," saying to Plaintiff, " 'I know you are not alone' " (Pl.'s Dep. at 49); (2) Plaintiff's co-workers "would just do crazy games over the phone," such as use "little nicknames or say little ugly stuff" (*Id.*); (3) Watkins and Auls "constantly did little things," such as leave Plaintiff alone to count the money (*Id.* at 51); (4) Plaintiff's co-workers "would just do crazy games over the phone," such as use "little nicknames or say little ugly stuff" (*Id.* at 49); (5) Plaintiff's co-workers "called" her "names" once when Plaintiff refused to attend a party "celebrating ... the leave of a particular coworker" (*Id.*); (6) Her co-workers "accused [Plaintiff] of attacking a coworker" (*Id.*); (7) These same co-work-

ers also accused Plaintiff of "improper physical contact with . . . customers in a sexual nature" (*Id.*); (8) Watkins and Auls "constantly did little things," such as leave Plaintiff alone to count the money (*Id.* at 51) and refuse to "do their part of the work" (*Id.* at 52); and (9) Plaintiff's co-worker commented that Plaintiff had "an odor," is "sexually active," and is "having sexual contact" with people at work. (*Id.* at 55, 56.)

Assuming as true Plaintiff's allegations, the court in no way condones the type of actions allegedly taken by Plaintiff's co-employees. However, although the alleged conduct may have been humiliating and demeaning, the tort of outrage does not provide recovery for " 'mere insults, indignations, threats, annoyances, petty oppression, or other trivialities.' " *Inmon,* 394 So.2d at 364–65 (citation omitted).

Moreover, the court finds compelling the fact that in every case where Alabama courts have allowed this issue to go to the jury, the allegations have been far more egregious than those presented in this case. Given the limited nature of a cause of action for outrage, the court finds that the record simply does not disclose facts so poignant as to rise to the level of outrage. Because the court finds that Plaintiff has failed to carry her burden of proving a claim of outrage, summary judgment as to Plaintiff's tort of outrage claim is due to be entered in favor of the ABC Board.

## CONCLUSION

In her Complaint and Amended Complaint, Plaintiff has alleged six claims. In sum, the court finds that summary Judgment is due to be entered in favor of the ABC Board on the following five claims: (1) Plaintiff's ADA failure-to-accommodate claim; (2) Plaintiff's ADA hostile work environment claim; (3) Plaintiff's Title VII hostile work environment claims based on sex and race; (4) Plaintiff's state law slander/defamation claim; and (5) Plaintiff's state law outrage claim. However, the court finds that the ABC Board's Motion For Summary Judgment is due to be denied on Plaintiff's ADA retaliation claim, and, thus, Plaintiff may proceed to trial on this claim. The court emphasizes that at trial Plaintiff's evidence must be limited to her ADA retaliation claim and that claim alone.

## *ORDER*

Accordingly, based on the foregoing, it is CONSIDERED that Defendant's Motion For Summary Judgment be and the same is hereby GRANTED IN PART and DENIED IN PART as follows:

(1) Defendant's Motion For Summary Judgment on Plaintiff's ADA failure-to-accommodate claim be and the same is hereby GRANTED;

(2) Defendant's Motion For Summary Judgment on Plaintiff's ADA hostile work environment claim be and the same is hereby GRANTED;

(3) Defendant's Motion For Summary Judgment on Plaintiff's Title VII hostile work environment claims based on race and sex be and the same is hereby GRANTED;

(4) Defendant's Motion For Summary Judgment on Plaintiff's state law defamation/slander claim be and the same is hereby GRANTED;

(5) Defendant's Motion For Summary Judgment on Plaintiff's state law outrage claim be and the same is hereby GRANTED; and

(6) Defendant's Motion For Summary Judgment on Plaintiff's ADA retaliation claim be and the same is hereby DENIED.